**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 15 C 11310** |
| **v.** | ) | |
| | ) | **Magistrate Judge** |
| **CAROLYN W. COLVIN, Acting** | ) | **Susan E. Cox** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## ORDER

Plaintiff John Jones ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Defendant," or the "Commissioner") to deny his application for disability benefits. The parties have filed cross-motions for summary judgment. For the following reasons, the Commissioner's motion is denied [dkt. 12], Plaintiff's motion is granted [dkt. 11], and the Administrative Law Judge's decision is reversed and remanded for further proceedings consistent with this opinion.

## STATEMENT

In August 2012, Plaintiff filed claims for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), alleging disability due to depression, post-traumatic stress disorder ("PTSD"), left arm pain, and right leg swelling. (R. 231, 234, 271.) The claims were denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 28, 2014. (R. 34-83.) On June 12, 2014, the ALJ denied Plaintiff's claim, finding him not disabled under the Act and therefore ineligible for benefits. (R.

18-29.) The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

Plaintiff was born on December 12, 1959, and was fifty-four years old at the time of his hearing. (R. 39, 231.) He completed tenth grade, but has limited reading skills, and he worked as a chemical batch operator, chemical operator, blender operator, and construction laborer. (R. 39-40, 49, 58.) He has a healed scar from a 2008 gunshot wound and subsequent surgery to his lower left leg. (R. 375-76.) He saw his doctor for pain in his left hip and knee in October 2010 and January 2011, and was diagnosed with arthritis pain. (R. 307-310.)

Most of the medical evidence of record documents Plaintiff's mental health treatment. According to Plaintiff's later reports to medical personnel, he was first diagnosed with depression and PTSD in 2010, when he received care from a Board of Health facility. (R. 373, 382.) That facility closed in 2011. (R. 382.) In July and August 2012, he made three visits to the Englewood Mental Health Center, where he again received treatment for depression and PTSD. (R. 332-342.) He also reported to the emergency room of Jackson Park Hospital for depressive symptoms on August 18, 2012. (R. 321-328.) Reported social stressors in his life in 2012 included unemployment and financial difficulties, legal and relationship problems, a lack of health insurance, and, by August 23, homelessness. (R. 324, 328, 332, 341-42.) The record documents one more visit to the Englewood Mental Health Center, along with a prescription for the antidepressant Sertraline, on October 1, 2012. (R. 344, 372.)

In a November 8, 2012 consultative exam, Dante Pimentel, M.D., noted that Plaintiff "appear[ed] depressed" with an apparent "loss of interest." (R. 373-74.) Dr. Pimentel also

reviewed Plaintiff's July to October 2012 treatment records. He listed his diagnoses and conclusions as depression, PTSD, gunshot wound to the left leg post status surgical repair and rod placement, left arm pain, and a history of tobacco abuse. (R. 375-76.)

Four agency reviewing doctors subsequently reviewed Plaintiff's file. In November 2012, Richard Bilinsky, M.D., assessed Plaintiff's work-related capacities and opined that he is capable of medium work with no other physical limitations. (R. 90-91.) Also in November 2012, Kirk Boyenga, Ph.D., determined that Plaintiff's mental impairments do not meet or equal a listing, and cause only mild restrictions in his activities of daily living and social functioning and moderate restrictions in his concentration, persistence, and pace. (R. 88-89.) In an RFC assessment, Dr. Boyenga opined that Plaintiff is moderately limited in three of eight listed abilities related to concentration, persistence, and pace: the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or in proximity to others without being distracted by them; and the ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (R. 92.) In social interaction and adaptive abilities, Dr. Boyenga assessed moderate limitations in Plaintiff's capacity to interact appropriately with the general public and in his ability to respond appropriately to changes in the work setting. (R. 92-93.) Dr. Boyenga did not find significant limitations in any other work-related mental capacity. (R. 91-93.) In February 2013, Howard Tin, Psy.D., affirmed the psychological portion and Lenore Gonzalez, M.D. affirmed the physical portion of the earlier doctors' capacity assessments. (R. 122-23.)

Later, on March 10 and April 3, 2014, Plaintiff received additional treatment for depression and PTSD at South Central Community Services, Inc. (R. 382-410.) In his last

appointment of record, Plaintiff reported feeling depressed, with no interest or motivation and very poor concentration. (R. 401.)

Plaintiff testified at a hearing before the ALJ on May 28, 2014. He stated that he stopped working in October 2013 due to his depression, which affects his concentration, his work attendance, and his energy. (R. 51-52, 54, 56-57.) He also has a decreased appetite with weight loss, and difficulty sleeping due nightmares and flashbacks about a past experience. (R. 60-61, 64-65.) He was not taking medication or receiving therapy when he lost his job because he had no insurance, and free help is hard to find. (R. 52.) He had not received mental health services earlier because he became homeless and went to Mississippi for a time. (R. 74-75.) He sought care there and set up an appointment, but returned to Chicago without treatment. (R. 75.) At the time of the hearing, he had just gotten on CountyCare and was receiving treatment, including medication that helps "somewhat . . . sometimes." (R. 52-53, R. 62.) Standing too long on his injured leg causes it to swell and hurt, but after shifting his weight to the other leg for too long he experiences pain in the other leg. (R. 58.) He can stand for about forty-five minutes. (R. 59.) When his leg swells he elevates it for "a couple of hours at a time." (R. 67.) His left arm has caused problems in the past but bothers him less now, and he can lift it overhead with difficulty. (59-60.) In response to a question about his right arm pain, he speculated it might have been due to "years of working in the industry."[1] (R. 67.)

Internist Hugh Savage, M.D., and psychologist Larry Kratitz, M.D., reviewed Plaintiff's file, observed his testimony, and testified as to his physical and mental status, respectively. (R. 34, 67-77, 219-20.) After briefly questioning Plaintiff about his arm pain and leg swelling, Dr.

---

[1]     Although this point will not prove central to the Court's analysis in this opinion, the Court does note a discrepancy within the record with respect to which arm has limitations. (*Compare* R. 60-61, 271, 367-77 (left arm) *with* R. 25, 67-69 (right arm.)) On remand, the ALJ should resolve this conflict in the evidence. *Golembiewski v. Barnhart,* 322 F.3d 912, 917 (7th Cir. 2003.)

Savage diagnosed a status post gunshot wound to the leg, with residual edema controlled fairly well with support stockings. (R. 68.) He opined that other musculoskeletal pain might be due to a tobacco abuse disorder, and that Plaintiff has no medically determinable impairment in his right arm or any other physical impairment. (68-69.) He further opined that Plaintiff's impairments do not meet a listing, but do limit him to light work with no climbing of ladders, ropes, or scaffolds and no more than occasional overhead reaching with his right (dominant) arm, at a weight of no more than five pounds, but no other manipulative limitations. (R. 69-71.) He can frequently but not continuously balance, stoop, kneel, crouch, crawl, climb ramps and stairs, or use his left foot to operate controls. (R. 71.) He should avoid concentrated exposure to unprotected heights and moving mechanical parts. (R. 72.)

Dr. Kravitz then testified as to Plaintiff's mental impairments, noting his past diagnoses of moderate major depressive disorder and chronic PTSD and his history of alcohol abuse and drug abuse. (R. 73, 75.) He opined that Plaintiff's impairments do not meet or equal any listing, but they do limit his workplace functioning to simple, repetitive tasks; brief and superficial contacts with coworkers, supervisors, and the public; and ordinary levels of work stress. (R. 73-74.) Dr. Kravitz further explained that, although Plaintiff's depressive symptoms had made it difficult for him to concentrate sufficiently to do the complex tasks associated with his former employment, he can still perform "simple, repetitive, or rote" work tasks. (R. 76.) He opined that Plaintiff has mild difficulties with his activities of daily living and mild to moderate difficulties with social functioning, has moderate difficulties in concentration, persistence, or pace, and has experienced no episodes of decompensation. (R. 76-77.)

At the hearing, Vocational Expert James Radke (the "VE") described Plaintiff's past work as medium exertion and semi-skilled with limited transferability of skills to light work. (R.

77-78.) The ALJ then asked the VE whether jobs exist that can be performed by an individual of Plaintiff's past age and work experience with very poor reading skills such that he requires help filling out job applications and needs to be shown how to do the job, who can perform light work limited to simple, routine tasks and occasional contact with coworkers, supervisors, and the public; stay on task for 90 to 95 percent of the day; never work on ladders, ropes, or scaffolds or at unprotected heights; only occasionally lift five pounds over shoulder height with his right arm; and frequently but not continuously balance, stoop, kneel, crouch, crawl, climb ramps and stairs, or operate foot controls. (R. 79-81.) The VE responded that the person would be able to perform the jobs of hand packer, cleaner, or courier. (R. 81.) However, if the person were limited to standing and walking for just two or two-and-a-half hours a day, he would be deemed disabled under the Social Security "grids." (R. 81-82.) Additionally, there would be no jobs available if the person had impaired concentration which limited his on-task productivity to 80 percent of the workday. (R. 82.) Finally, there are no jobs available that do not involve a supervisor or coworkers. (*Id.*)

The ALJ issued a written decision on June 12, 2014, following the five-step analytical process required by 20 C.F.R. § 416.920. (R. 18-29.) As a preliminary matter, the ALJ found that Plaintiff meets the insured status requirements for DIB eligibility through December 31, 2016. (R. 20.) At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of October 1, 2013. (*Id.*) At step two, the ALJ concluded that Plaintiff has the severe impairments of a post status gunshot wound to the left leg, depression, and post-traumatic stress disorder ("PTSD"), but that his left arm pain is not a medically-determinable impairment. (R. 20-21.) At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of a

listed impairment. (R. 23-24.) The ALJ next found that Plaintiff retains the Residual Functional Capacity ("RFC") to perform light work consisting of simple, repetitive tasks with only occasional contact with coworkers, supervisors, or the public, and can maintain on-task productivity of 90-95% of the workday, with the following restrictions: he can only occasionally can lift up to five pounds over shoulder height with his right arm; he can frequently but not continuously use the right foot for foot controls; he can frequently bend, stoop, crouch, crawl, and climb ramps and stairs; and he can never climb ladders, ropes, or scaffolds or work at unprotected heights. (R. 25.)

At step four, the ALJ concluded that Plaintiff is unable to perform any of his past relevant work. (R. 28.) At step five, however, the ALJ determined that, in light of Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that he can perform, such as hand packer, cleaner, and courier. (R. 28-29.) These findings led to the conclusion that Plaintiff is not disabled as defined by the Act. (R. 29.)

## DISCUSSION

## I.      Standard of Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the

Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). "An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning." *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

## II.     The ALJ Failed to Discuss Plaintiff's Reasons for Not Seeking Treatment

Plaintiff argues that the ALJ performed a flawed analysis of his credibility by drawing improper inferences from his failure to seek treatment. The Social Security Administration (the "Administration") has recently clarified its sub-regulatory policies about symptom evaluation, eliminating the term "credibility" to emphasize that "subjective symptom evaluation is not an examination of the individual's character." *See* SSR 16-3p, 2016 WL 1119029 at *1 (effective March 28, 2016). Though SSR 16-3p post-dates the ALJ hearing in this case, the application of a new policy to matters on appeal is appropriate where, as here, the new ruling is a clarification of, rather than a change to, existing law. *See Pope v. Shalala*, 998 F.2d 473, 482-483 (7th Cir. 1993)

(overruled on other grounds by *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999)); *see also McNeal v. Colvin,* No. 14 C 3722, 2016 WL 1594992 at *8, n. 3 (N.D. Ill. Apr. 21, 2016); *Qualls v. Colvin,* No. 14 CV 2526, 2016 WL 1392320 at *6 (N.D. Ill. Apr. 8, 2016).

Both the new policy ruling and the one it supersedes provide guidance in the application of 20 C.F.R. § 404.1529, which states that the Administration "will carefully consider" information it has about the claimant's symptoms, including information about medications and treatments. Under the prior policy, the Seventh Circuit held that "the ALJ 'must not draw any inferences' about a claimant's condition" from a failure to pursue or comply with treatment "unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (quoting SSR 96–7p)). Similarly, under the new policy ruling, the Administration may not use the failure to pursue treatment as a reason for discounting an individual's claims regarding symptom intensity, persistence, and limiting effects "without considering possible reasons he or she may not . . . seek treatment consistent with the degree of his or her complaints." SSR 16-3p at *8. Among the illustrative list of reasons the ALJ must consider is that the claimant "may not be able to afford treatment and may not have access to free or low-cost medical services." *Id.* at *9. The ALJ must then, while evaluating symptom severity, "explain how [he] considered the individual's reasons" for not seeking treatment, doing so in a manner sufficient to allow the Court to trace the path of his reasoning. *Id.; see Carlson v. Shalala,* 999 F.2d 180 (7th Cir. 1993.)

In this case, the ALJ ascribed "slight weight" to Plaintiff's testimony, largely because he "has not generally received the type of medical treatment one would expect for a totally disabled individual," instead taking "relatively infrequent trips to the doctor for the allegedly disabling

symptoms" and receiving "no actual treatment for any alleged physical impairment since the alleged onset date." (R. 22.) At the hearing, Plaintiff explained that he had discontinued treatment because of a lack of insurance, homelessness, and a temporary move out of state. (R. 52, 62, 74-75.) He also testified that he had just received CountyCare insurance earlier that month. (R. 62.) His financial troubles, lack of insurance, and lack of housing were also documented by his mental health care providers. (R. 332, 341-42.) The ALJ does not address any of this evidence in his opinion. He is not free to base his symptom evaluation on Plaintiff's lack of medical care while omitting any discussion of evidence about Plaintiff's reasons for not seeking treatment. *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) (Where ALJ discredited a claimant's testimony based on a lack of treatment but overlooked evidence about her reasons, the "failure to explore [the] evidence was a legal error.") If the ALJ disbelieves Plaintiff's proffered explanations or finds those reasons insufficient to explain his sparse treatment history, he is required to explain why. The ALJ's failure to explain how he considered Plaintiff's explanations for his gaps in treatment is an error requiring remand.

Because this matter must be remanded to rectify that error, the Court forms no opinion as to the merits of any of Plaintiff's other arguments at this time.

### CONCLUSION

For the foregoing reasons, this decision of the ALJ is reversed and remanded for proceedings consistent with this opinion.

Date: 9/14/2016                                    _____

                                                   **U.S. Magistrate Judge, Susan E. Cox**